# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TYRIUS GREEN, | : | |
| Petitioner, | : | Civil Action No. 15-1886 (PGS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEVEN M. D'ILIO, et al, | : | |
| | : | |
| Respondents. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

## I.     INTRODUCTION

Petitioner Tyrius Green ("Petitioner"), a convicted criminal in the State of New Jersey, has filed an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed by the State for murder, possession of a firearm for an unlawful purpose, and unlawful possession of a weapon. (ECF No. 3.) Respondents have filed a Response. (ECF No. 10.) Petitioner filed a Traverse. (ECF No. 14.) For the reasons set forth below, the Court will deny the Amended Petition on the merits.

## II.     BACKGROUND

The charges against Petitioner arose from an incident that occurred on August 14, 2003 in Trenton, New Jersey. The New Jersey Superior Court, Appellate Division set forth the facts, as adduced at a jury trial, as follows:

> At trial, Kenute Brown testified that at about 10:00 p.m. that night, while Brown was purchasing crack-cocaine, he heard defendant shout out, "Dred, Dred," one of Brown's nicknames. However, when Brown started to approach defendant, defendant made it clear that he was referring to another person, Edgerton Munroe, who also went by the nickname, "Dred." Brown told Munroe that defendant

wanted to speak to Munroe, and Munroe made his way over to defendant. Brown could not recall what defendant was wearing that night, but he "could see his face." Defendant and Munroe walked into an area known as "The Hole", a dark, wooded area where people "stopped to go get high, and [be] away from police." A few minutes later, Brown heard three to four gunshots coming from the area where defendant and Munroe had just entered. About ninety seconds from the time of the gunshots, Brown saw Munroe run from "The Hole" and fall to the ground.

Patrolman Brian Kowalczyk of the Trenton Police Department responded to the scene of the shooting. He observed Munroe, near a curb, lying on the ground with a gunshot wound to his chest area. Attempts to revive Munroe were unsuccessful; he was transported to a local hospital, but Munroe died as a result of excessive bleeding from a bullet wound.

(ECF No. 10-3, at 2–3 (alteration in original).)

During its investigation, the Trenton Police Department interviewed and obtained statements from a number of individuals that had been near "The Hole" on the night of the incident, including Kenute Brown, Carol Guerra, Aviva Fowler, Linda Brown, and Willie Peters. (*Id.* at 3–4.) Guerra told police she had been at The Hole on the night of the incident getting high. (*Id.* at 4.) According to her statement,

two males came into the area and chased another man who was wearing a light-colored shirt. She described one of the pursuers as between five-eight and five-nine; the other was shorter. Both men were dressed in black. The taller man had a black fedora type hat; the shorter one wore a black ski mask. The taller man held a "Dirty Harry [type of] gun." Guerra heard gunshots and saw the taller man following the male in the light-colored shirt, shooting at him. Although she did not see their faces, when the two men in black entered "The Hole", Guerra had thought the taller man was defendant, Tyrius Green, because of "his build and the way he walked. Tyrius has a very distinctive walk, especially when he thinks he is being macho." Guerra had known defendant for between ten and fourteen years.

(*Id.* (alterations in original).) At trial, however, Guerra testified that she did not pay a lot of attention to what the men in black were doing and was focused at the time on getting high. (*Id.* at

4–5.)  She also testified that she was high both times she spoke to police.  (*Id.*)

Fowler was also present at The Hole on the night of the shooting "smoking 'coke.'"  (*Id.*)

Fowler knew the defendant and recognized his walk.  (*Id.* at 4-5.)  She gave the following account:

> Tyrius told him [Dred Brown] to tell Dred [Munroe] that there was
> a hundred dollar sell.  [Munroe] came back a few minutes later, and
> when he came back, as soon as he came through the walkway,
> Tyrius reached out and tried to grab him from the back, but Dred
> dodged him and started to run . . . .  That is when Tyrius pulled the
> gun out, aimed it at Dred and said Freeze.  He said it again and then
> fired.  That is when I heard Dred say ouch but he kept running.  The
> second time that Tyrius fired the gun I saw Dred hop up off the
> ground a little bit.  I don't think he was hit I think he was just saying
> ouch because somebody was firing at him.  Tyrius shot three times
> back to back.  Every time he shot the gun I saw sparks come out of
> it.  Then Tyrius and the short guy chased after "Dred".  Then I left
> to go find my boyfriend everyone else that was back there ran out in
> different directions.

(*Id.* (alterations in original).)  At trial, Fowler indicated that she did not recall being in The Hole

at the time of the shooting but remembered being brought to the police station to sign papers and

testified that while she spoke with the detective she was "cracked out."  (*Id.* at 6.)

Two other witnesses testified at trial.  Linda Brown was also in The Hole at the time of the

shooting and testified that she saw two men, one of whom was noticeably taller, enter the area.

(*Id.*)  Both were dressed in black with scarves around their faces.  (*Id.*)  She testified that "[t]he

taller man shouted 'Don't move' to a person who entered.  He then proceeded to fire four shots."

(*Id.* at 6–7.)  Brown also testified that she knew Petitioner "her entire life" and at first believed

him to be the shooter.  (*Id.* at 7.)  "However, she could not positively identify him."  (*Id.*)  Willie

Peters also testified that he was in The Hole that evening, but he did not see the shooting and only

heard three gunshots.  (*Id.*)  Peters also knew Petitioner since he was a child and "thought that he

saw [Petitioner] running from The Hole."  (*Id.*)

Petitioner was charged via indictment on May 26, 2004 with first-degree murder, N.J. Stat.

Ann. § 2C:11-3(a)(1); first-degree felony murder, N.J. Stat. Ann. § 2C:11-3(a)(3); first-degree robbery, N.J. Stat. Ann. § 2C:15-1; second-degree possession of a weapon for an unlawful purpose, N.J. Stat. Ann. § 2C:39-4(a); and third-degree unlawful possession of a weapon, N.J. Stat. An.. § 2C:39-5(b). (*Id.* at 8.) The case proceeded to jury trial in May 2005. (*Id.*) At the close of evidence, defense counsel moved for judgment of acquittal on all counts. (*Id.*) The trial court granted the motion in part and dismissed the felony murder and robbery counts. (*Id.*) The jury found Petitioner guilty of the remaining charges. (*Id.*) Petitioner was sentenced to a life term of imprisonment with a 30-year period of parole ineligibility on the murder charge. (ECF No. 10-2.) The weapons offenses were merged and Petitioner was sentenced to a ten-year prison term to run consecutive to the life sentence on the murder charge. (*Id.*; *see also* ECF No. 10-3, at 2 & n.1.)

Petitioner appealed his conviction and sentence, and the Appellate Division affirmed his conviction, but remanded for resentencing on June 17, 2008 due to a discrepancy between the Court's oral pronouncement of Petitioner's sentence and the judgment of conviction. (ECF No. 10-3.) The New Jersey Supreme Court denied certification on October 6, 2008. (ECF No. 10-6.)

Petitioner then filed a petition for post-conviction relief (the "PCR Petition") in the Superior Court of New Jersey, Law Division on January 20, 2011. (ECF Nos. 10-7, 10-8.) The PCR Petition was denied by the Superior Court of New Jersey, Law Division in a written opinion issued on April 26, 2012. (ECF No. 17-4, at 218–48.) The PCR Court determined that Petitioner's claims were procedurally barred by New Jersey Court Rule 3:22-4 because the substantive issues underlying his ineffective assistance of counsel claims had been previously adjudicated on appeal. (*Id.* at 228–30.) Despite finding Petitioner's claims to be procedurally barred, the PCR Court additionally denied each claim on the merits. (*Id.* at 230–48)

Petitioner appealed that decision, and on April 30, 2014, the Appellate Division affirmed

the denial of his PCR petition. (ECF No. 10-14.) The Appellate Division agreed with the PCR

Court's determination that Petitioner's claims were not only procedurally barred, but also that his

claims lacked substantial merit. (*Id.*) Petitioner filed a petition for certification to the New Jersey

Supreme Court, which was denied on October 24, 2014. *State v. Green*, 220 N.J. 42 (2014).

Petitioner filed the instant habeas petition with this Court on March 6, 2015. (ECF No. 1.)

On March 27, 2015, this Court administratively terminated his petition for failure to use a proper

habeas form. (ECF No. 2.) Petitioner executed an amended petition on April 22, 2015 (the

"Amended Petition"). (ECF No. 3.) Respondents filed a timely answer to the Amended Petition.

(ECF No. 10.)

On January 23, 2019, this Court entered an Order and Opinion finding that the Amended

Petition constituted a "mixed petition" as it contained a mix of exhausted and unexhausted claims.

(ECF Nos. 19, 20.) Accordingly, the Court declined to rule on the merits of the Amended Petition

and provided Petitioner with the opportunity to either (1) move for a stay and abeyance so he may

return to state court to exhaust his unexhausted claim or (2) request that this Court delete the

unexhausted claim and proceed only on his exhausted claim.[1] (ECF No. 19, at 9.) This Court

advised that if Petitioner did not file any response, it would take his inaction as his assent to

proceed on his only exhausted claim–that the trial court's erroneous jury instruction on

identification violated his due process rights under the Fifth and Fourteenth Amendments. (*See

id.* at 7, 9.) Petitioner did not file a timely response.

## III.  LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

---

[1] In its prior Opinion, the Court additionally found that certain of Petitioner's claims were not cognizable under § 2254 as they pertained only to state law considerations. (*See* ECF No. 19, at 5 n.1.)

§ 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

"[Section] 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Cullen*, 563 U.S. at 181 (quoting § 2254(a)).

A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). If a claim has been adjudicated on the merits in state court proceedings, this Court has "no authority to issue the writ of habeas corpus unless [the state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012) (quoting § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by the AEDPA . . . do not apply." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

When a claim has been adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *see also Parker*, 567 U.S. at 40–41. A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to state court decisions. *See Felkner v. Jackson*, 562 U.S. 594, 598 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## IV. DISCUSSION

Since the Court issued its Opinion finding that the Amended Petition constituted a mixed petition, it requested from Respondents additional filings from the New Jersey Supreme Court out of an abundance of caution and to confirm that Petitioner's ineffective assistance of counsel claims were, in fact, unexhausted. (*See* ECF No. 21.) Respondents filed copies of Petitioner's petitions for certification to the New Jersey Supreme Court on direct and post-conviction review, which

revealed that certain other of Petitioner's claims were, in fact, exhausted. (*See* ECF Nos. 22, 22-1.) Accordingly, for the sake of completeness, the Court will now deny the Amended Petition in its entirety on the merits pursuant to § 2254(b)(2). *See* § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Mahoney v. Bostel*, 366 F. App'x 368, 371 (3d Cir. 2010).

### A. Substantive Claims

#### 1. Trial Court Erred in Denying Motion for Judgment of Acquittal (Ground Eleven)

Petitioner contends that the trial court's partial denial of his motion for judgment of acquittal violated his federal due process right because the witness testimony elicited at trial did not prove, beyond a reasonable doubt, that Petitioner was the shooter. Petitioner raised this issue to the Appellate Division on direct appeal, which was "satisfied that sufficient evidence was developed by the State to justify submitting to the jury the issue of defendant's guilt on the charges of murder, possession of a firearm for an unlawful purpose and unlawful possession of a firearm." (ECF No. 10-3, at 10.) The Appellate Division further explained that:

> The State presented several witnesses who knew defendant and who indicated defendant was present at the time of the shooting. At least two of the witnesses gave statements that were admitted into evidence in which they identified defendant as the shooter. Another, who said that defendant was not wearing a mask at all, placed defendant in the company of the victim immediately before the shooting began. Accepting this evidence as true and drawing reasonable inferences therefrom, a reasonable jury could and did find him guilty of the crimes charged.

(*Id.* at 11.)

A motion for judgment of acquittal is a motion to challenge the sufficiency of the evidence presented at trial. *See Jackson v. Virginia*, 443 U.S. 307, 317 n.10 (1979). In *Jackson*, the Supreme

Court instructed that where a petitioner claims that his conviction was against the weight of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "Stated differently, a court reviewing the sufficiency of the evidence may overturn a conviction only 'if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013) (quoting *Jackson*, 443 U.S. at 324). This inquiry requires "federal courts to look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (citation omitted).

On habeas review, the factual findings of the state court are presumed to be correct, absent clear and convincing evidence to the contrary. *See* § 2254(e)(1).[2] As the trial court and Appellate Division determined, there was ample evidence presented at trial on which the jury could rely to find that Petitioner was the shooter. Nevertheless, Petitioner argues that the trial court should not have submitted these charges to the jury because the evidence did "sufficiently establish beyond a reasonable doubt that [he] [w]as the masked man who shot Munroe." (ECF No. 1-2, at 34.) In

---

[2] Petitioner did not fully exhaust this claim and, thus, the Court's review is *de novo*. *Collins v. Sec'y of Pa. Dept. of Corrs.*, 742 F.3d 528, 544 n.9 (3d Cir. 2014) ("If there has been no adjudication on the merits of a claim, 'the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact.") Nevertheless, the presumption of correctness applied to state court findings of fact still applies. *Id.*; *see also Bilal v. Walsh*, No. 11-1973, 2015 WL 10372429, at *6 (E.D. Pa. May 20, 2015). With its Answer, the State provided transcripts of only three days of trial. (*See* ECF Nos. 10-15, 10-16 (May 3, 2005, jury selection); ECF Nos. 10-17, 10-18, 10-19, 10-20 (May 5, 2005, witness testimony); ECF Nos. 10-21, 10-22, 10-23, 10-24 (May 10, 2005, witness testimony).) It is apparent from the Appellate Division's review of the record that there were additional days of witness testimony, the transcripts of which were not filed with this Court. Accordingly, in its adjudication of this claim, the Court relies on the available transcripts and the Appellate Division's summary of the testimony set forth at trial.

support of his argument, Petitioner identifies the inconsistencies between the witness testimony and their alleged lack of credibility as indicative of the lack of evidence to support the charges. However, such issues are clearly for the jury to resolve. *Jackson*, 443 U.S. at 319 (observing that it is "the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). The role of the court in determining whether there is sufficient evidence to support a charge is only to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19. Based on the evidence in the record, it is apparent that the determination of whether Petitioner was the shooter required weighing the credibility of witnesses who testified at trial and resolving the many inconsistencies in their testimony. Viewing that testimony in the light most favorable to the prosecution, this Court is not convinced that no trier of fact could have found Petitioner guilty beyond a reasonable doubt. As such, relief on this claim is denied.

### 2. Error in Jury Instruction on Identification (Ground Twelve)[3]

Petitioner next argues that the trial court's charge to the jury on identification was "unacceptably vague and contained gross misstatements of fact," making it "capable of leading the jury to a verdict it otherwise would not have reached." (ECF No. 3, at 31.)[4] The alleged "gross

---

[3] As found in the Court's January 23, 2019 Opinion, this claim was fully exhausted in the state courts. Accordingly, the Court applies the AEDPA deferential standard of review.

[4] In the Amended Petition, Petitioner raises multiple claims related to the trial court's allegedly erroneous instruction on identification:

> Ground Twelve: The trial judge's erroneous identification charge, which was unacceptably vague and contained gross misstatements of fact, was clearly capable of leading the jury to a verdict it otherwise would not have reached. The severe potential for prejudice caused by this erroneous charge is even greater when the

misstatement of fact" referred to by Petitioner is the trial court's statement that certain witnesses

---

charge is evaluated against the prosecutor's insidious presentation of Guerra's and Brown's identification testimony. This violated Petitioner's right to due process, and equal protection of the law as guaranteed by the United States Constitution and the Fifth, Sixth and Fourteenth, Amendments thereto.

Ground Seventeen: In light of the nature and magnitude of the judge's misstatements during the identification charge, the ensuing prejudice was not adequately diminished by the judge's earlier instruction that the jury "should" rely on its own recollection of the evidence. This violated Petitioner's right to due process, and equal protection of the law as guaranteed by the United States Constitution and the Fifth, Sixth, and Fourteenth, Amendments thereto.

Ground Eighteen: The "mistake" of fact contained in the identification charge was not "fleeting." This violated Petitioner's right to due process, and equal protection of the law as guaranteed by the United States Constitution and the Fifth, Sixth, and Fourteenth, Amendments thereto.

[G]round Twenty: The judge's instructions that the jury "should" rely on its own recollection of the evidence did not diminish the potential for prejudice cause[d] by the mistake in the identification charge when the jury's recollection of the identification evidence was sure to have been tainted by the prosecutor's misleading examination of key eyewitnesses. This violated Petitioner's right to due process, and equal protection of the law as guaranteed by the United States Constitution and the Fifth, Sixth and Fourteenth, Amendments thereto.

Ground Twenty-One: Contrary to the well-settled principle that an error in a jury charge must not be evaluated in a vacuum, the Appellate Division failed to consider the prosecutor's misleading questioning of two eyewitnesses in measuring the potential for prejudice created by the mistake in the identification charge. This violated Petitioner's right to due process, and equal protection of the law as guaranteed by the United States Constitution and the Fifth, Sixth and Fourteenth, Amendments thereto.

Because each of these claims, ultimately, rests on whether the trial court's identification instruction violated Petitioner's right to due process, the Court will consider them together as one claim for relief.

at trial "identified the defendant in court as the person who committed the offenses charged." (*Id.*) No in-court identification was made at trial. Petitioner contends that this error, when viewed in light of the entire trial record, violated his right to due process under the Fifth and Fourteenth Amendments. (*Id.*)

With respect to identification, the trial court gave the following detailed instruction to the jury:

> Now, the defendant as part of his general denial of guilt, contends that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offense. The burden of proving the identity of a person who committed the crime is, of course, upon the State. For you to find the defendant guilty, the State must prove beyond a reasonable doubt that this defendant is the person who committed the crime. And as I told you before, the defendant has no burden to produce evidence or that he is not the person who committed the crime. The defendant has neither the burden nor the duty to show that the crime that was committed was committed by someone else, or to prove the identity of that other person.
>
> You must determine, therefore, not only whether the State has proved each and every element of the offense charged beyond a reasonable doubt, but also, whether the State has proved beyond a reasonable doubt that this defendant is the person who committed it.
>
> Now, the State, in trying to meet that burden, presented the testimony of several witnesses who identified the defendant. *You will recall that these witnesses identified the defendant in court as the person who committed the offenses charged.* The State also presented testimony that on a prior occasion before this trial witnesses made such an identification-identified the defendant as the person who was, you may conclude circumstantially or directly or however you conclude, that the defendant was-the identification of the defendant was based upon the observations and perceptions they made of the perpetrator at the time the offense was being committed. It is your function to determine whether the witness's identification of the defendant is reliable and believable, or whether it is based on mistake, or for any reason is not worthy of belief. You must decide whether it is sufficiently reliable evidence upon which to conclude that this defendant is the person who committed the offenses charged.

In evaluating these identifications, you should consider the observations and perceptions on which the identifications were based, and the witness's ability to make those observations and perceptions. If you determine that the out-of-court identification is not reliable, you must still consider the witness's in-court identification of the defendant, if you find it to be reliable.

Unless the in-court identification resulted from the witness's observation or perceptions of the perpetrator during the commission of the offense, rather than being the product of an impression gained at the out-of-court identification procedure, it should be afforded no weight. The ultimate issues of the trustworthiness of the in court and out-of-court identifications are for you to decide.

Fundamentally, there are, as you see, three levels of identification: Identification of the alleged perpetrator at the observation of the witnesses; the subsequent prior identifications through looking through the photo array or identifying photograph; and thirdly, the in-court. So, you make the determinations as I've just instructed you. If you have any questions, look at this. If you have any further questions, you'll let me know and I'll try to explain it further.

To decide whether identification testimony is sufficiently reliable upon which to conclude that this defendant is the person who committed the offenses charged, you should evaluate the testimony of the witness in light of the factors for considering credibility that I've already explained to you. In addition, you may consider the following factors: The witness's opportunity to view the person who committed the offense at the time of the offense; the witness's degree of attention on the perpetrator when he or she observed the crime being committed; the accuracy of any description the witness gave prior to the identification of the perpetrator; the degree of certainty expressed by the witness in making the identification; the length of time between the witness's observation and the offense at the first identification; discrepancies or inconsistencies between identifications; the circumstances under which the out-of-court identification was made; here, the single and multiple photograph arrays presented to the witness by the police; or any other factor on the evidence which-or lack of evidence in this case which you consider relevant to your determination whether identifications were reliable.

If, after all of the considerations of the evidence, you determine the State has not proven beyond a reasonable doubt that the defendant was the person who committed these crimes, then you must find the

> defendant not guilty. On the other hand, after consideration of all the evidence you are convinced beyond a reasonable doubt that the defendant was correctly identified, then you will consider whether the State has proven each and every element of the offenses charged beyond a reasonable doubt.

(ECF No. 10-3, at 14–17 (emphasis in original to identify the allegedly objectionable portion)).

On direct appeal, the Appellate Division determined that "[w]hen viewed as a whole, this jury instruction was adequate." (*Id.* at 17.) Although the Appellate Division acknowledged that the trial court was mistaken in how it described the identifications, it held that the mistake did not have "the capacity to prejudice defendant so much as to offend all notions of justice." (*Id.*) In so holding, the Appellate Division explained that "the misstatement was fleeting and it did not concern an element of an offense or some other legal issues. Rather, it related to the judge's recollection or recounting of events that occurred in open court and in the presence of the jury." (*Id.* at 18–19.) Accordingly, the Appellate Division observed, the effect of the factual error was limited by the trial court's later instruction that "regardless of what I may have said in recalling the evidence in this case, it is your recollection of the evidence that should guide you as sole judges of the facts." (*Id.* at 19.)

"[H]abeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights. *Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (holding that "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process")); *see also Middleton v. McNeil*, 541 U.S. 433, 437 (2004). A petitioner's due process rights are violated where the instruction "operated to lift the burden of proof on an essential element of an offense as defined by state law." *Echols*, 492 F. App'x at 312 (quoting *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997)).

An error in the jury instructions is not grounds for habeas relief if the error is harmless. *Pagliaccetti v. Kerestes*, 581 F. App'x 134, 136 (3d Cir. 2014) (citing *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996)). An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Edwards v. New Jersey*, No. 13-6523, 2015 WL 5007824, at *5 (D.N.J. Aug. 20, 2005) ("In determining whether there is harmless error, the court examines the impact of the error on the trial as a whole."). The effect of an allegedly erroneous jury instruction "must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Thus, the relevant question "is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 148.

The Appellate Division's determination that the trial court's error in the jury instruction on identification was harmless was not contrary to federal precedent nor was it an unreasonable application of that law. Looking to the charge as a whole, and in consideration the fact that "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge," *Cupp*, 414 U.S. at 147, the trial court's apparent error in the jury instructions was unlikely to have an effect on the outcome of the trial. The trial court clearly instructed the jury that it was to weigh the evidence presented by the State on identification to determine if Petitioner committed the crimes at issue and further explained that it was the jury's "recollection of the evidence that should guide [it] as sole judges of the facts." (*See* ECF No. 10-3, at 18.)[5] Any error in those

---

[5] Petitioner nevertheless argues that when paired with the "misleading" manner in which the prosecutor questioned the identification witnesses, the trial court's reference to in-court identifications acted to deprive him of due process. The Appellate Division described the

instructions did not act to lift the State's burden of establishing beyond a reasonable doubt that Petitioner was the shooter. Relief on this claim is denied.

### 3. Trial Court Erred in Instructing Jury It Could Not Consider Evidence of Premeditation (Ground Thirteen)

Petitioner next argues that the trial court erred in instructing the jury that it could not consider evidence of premeditation (or the lack thereof) in response to a question from the jury regarding its deliberation on the charge of knowing of purposeful murder and that the trial court's error violated his due process rights. It appears that during its deliberation, the jury submitted to the trial court the following question: "Is premeditation a factor in considering question 1A." (ECF No. 1-2, at 31.) Question 1A referred to Petitioner's charge for knowing and purposeful murder. (*See id.*) The Court responded that "[t]he simple answer is no" and that premeditation is "not a factor." (*Id.*)

Petitioner raised this claim to the Appellate Division on his direct appeal. The Appellate Division rejected his claim, holding that the trial court's response was "essentially correct." (ECF

---

misleading questioning to which Petitioner takes issue as follows:

> The prosecutor inquired of both [Guerra and Linda Brown] how the assailant was dressed. Immediately after he had elicited the description of a man in black from the witnesses, the prosecutor asked the witnesses if they knew Tyrius Green. Defendant contends this creates an inference by proximity in questioning that the man in black was in fact defendant, Tyrius Green.

(ECF No. 10-3, at 19.) Whether or not the prosecutor's questioning of Guerra and Linda Brown was in fact "misleading," it did not appear to create some mistaken impression that Guerra and Linda Brown identified Petitioner in court as the shooter. Guerra and Linda Brown were not the only witnesses who testified that they believed Petitioner to have been the shooter nor were they the only witnesses who identified him as such. Moreover, while Petitioner argues that the Appellate Division inappropriately considered the charge in a vacuum, the Appellate Division clearly considered the impact of the prosecutor's questioning on the jury and found that it was not misleading. (*See id.*) As such, the Court does not find that the prosecutor's style of questioning created some misunderstanding that witnesses identified Petitioner as the shooter in court.

16

No. 10-3, at 20–21.)  The Appellate Division explained:

> Premeditation was not a statutory element of murder under the circumstances of this case.  One may be convicted for first degree murder without motive or malice aforethought.  Indeed, N.J.S.A. 2C:11-3 instructs that a defendant must have committed the offense knowingly or purposefully.  The trial court had carefully outlined the applicable states of mind in its jury charge.  Again, there was no objection to [the] charge at trial, and we have no reason to speculate that a more comprehensive discussion of premeditation would have led to a different result.

(*Id.*)

As this claim pertains to jury instructions, which are primarily a matter of state law, Petitioner must show that the instruction violated his right to due process under the Fifth and Fourteenth Amendments to be entitled to habeas relief.  *See Estelle*, 502 U.S. at 71–72.  An erroneous jury instruction arises to such a violation where it "has substantial an injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  The Court discerns no reason to disturb the decision of the Appellate Division on this claim.  The Appellate Division determined that the trial court's answer to the jury's question was correct under state law.  Even under a de novo standard of review, the Court sees no reason to disturb that finding.  Relief on this claim is therefore denied.

### 4. Trial Court Erred in Permitting Prosecutor's Reference to Arrest Warrant (Ground Fourteen)

Petitioner next argues that the prosecutor's references to the warrant for his arrest during trial were highly prejudicial and violated his due process rights under the Fifth and Fourteenth Amendments.  During the testimony of Detective McMillan, there were several references made to the warrant for Petitioner's arrest.  First, Detective McMillan indicated that an arrest warrant was issued "[b]ased on the information gathered from the statements and IDs made, we were able to issue an arrest warrant for the arrest of Tyrius Green for his involvement in the death of Edgerton

Munroe." (ECF No. 10-22, at 13.) The prosecutor thereafter clarified when the arrest warrant had been issued and asked Detective McMillan to explain the efforts taken by law enforcement to effectuate Petitioner's arrest. (*See id.* at 15–16.)

Petitioner raised this claim to the Appellate Division on his direct appeal. The Appellate Division determined that Det. McMillian's testimony did not influence the jury as he "did not directly testify or imply that a judge made any determination beyond the existence of probable cause or that there had been reliance on evidence other than the investigatory material made known to the jury." (ECF No. 10-3, at 22.)

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle*, 502 U.S. at 67–68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967) ("[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial"); *accord Estelle*, 502 U.S. at 70. For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Petitioner has not demonstrated that the references to his arrest warrant were in error, let alone acted to deny him a fundamentally fair trial. The references to the arrest warrant were general and acted only to explain law enforcement's investigation and the eventual arrest of Petitioner. Petitioner's conclusory statement that these references were "highly prejudicial" fails to demonstrate that he was deprived his right to due process under the federal constitution.

Accordingly, relief on this claim is denied.

## 5. Admission of Written Witness Statements (Ground Fifteen)

Petitioner next argues that the trial court's admission of the written statements made to police by Fowler and Guerra violated his due process rights under the Fifth and Fourteenth Amendments. At trial, the prosecutor read into evidence relevant portions of the statements made by Fowler and Guerra to impeach their trial testimony and refresh their recollections. Thereafter, the prosecutor moved to have the written copies of the statements admitted as substantive evidence. Over the objection of defense counsel, the trial court admitted the written copies of the statements. On direct appeal, Petitioner raised this issue, arguing that the admission of the written statements was cumulative and unduly prejudicial under New Jersey Rule of Evidence 403. (ECF No. 10-3, at 23.) The Appellate Division held that the statements were properly admitted as substantive evidence as they were prior inconsistent statements. The Appellate Division explained:

> At least two of the witnesses, Carol Guerra and Aviva Fowler, recanted or seriously retreated from their earlier identifications of defendant while they were being cross-examined. Indeed, Fowler claimed she signed blank sheets and implied she would have said anything in order to receive money she needed to satisfy her addiction. The admission of the prior statements was not, under such circumstances, cumulative or unduly prejudicial to defendant. For example, the trial court ruled the jury had a right to examine the placement of Fowler's signature in relation to the content of her statement. They would then weigh the credibility of her claims that her statements had been fabricated by the investigators. This was an exercise of discretion by the trial court to which we must pay deference.

(*Id.* at 24.)

A state law evidentiary ruling may only be the basis for federal habeas relief where the admission of the evidence violated federal due process. *Estelle*, 502 U.S. at 71–72; *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal

courts to engage in a finely-tuned review of the wisdom of state evidentiary rules."). To prevail on a due process claim, a petitioner "must prove that he was deprived of 'fundamental elements of fairness in [his] criminal trial.'" *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (alteration in original) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992)).

Petitioner has not demonstrated that the admission of these statements caused any deprivation of the fundamental elements of fairness of his trial. As the Appellate Division found, the statements were properly admitted under New Jersey evidence law. Petitioner's vague assertions that that the admission of the written statements was "unnecessary" and "highly prejudicial" are insufficient to demonstrate that his due process rights were violated. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991) ("[B]ald assertions and conclusory allegations do not provide sufficient ground . . . to require an evidentiary hearing."). According, relief on this claim is denied.

### 6. Trial Court Erred in Giving Flight Charge (Ground Sixteen)

Petitioner next claims that his federal right to due process was violated by the trial court providing the jury with a flight instruction. At the charge conference, the trial court agreed with the State that a flight charge was appropriate, over the objection of defense counsel:

> [THE PROSECUTOR]: Also the State would be asking for flight.
>
> THE COURT: I'm going to give flight and I'm going to give the jury the opportunity to determine whether the propitious appearance of the defendant in the Bronx, two, three, four days after the event can be considered if they so desire, and the flight charge is broad enough to permit the jury to make that determination. I think the cross-examination of Ms. Green invites the use of that charge, and [the prosecutor] is commended for his adroitness, his occasional adroitness.
>
> . . .
>
> [DEFENSE COUNSEL]: Your Honor, on that point, I don't see that

any evidence at all was produced that he ran away from anything or he was fleeing.

THE COURT: Well, you have a situation where the event took place on the 14th into the morning of the 15th. The defendant is seen on the streets, he is not seen on the streets thereafter. Detective McMillan goes out to look for him, leaves, according to his testimony, cards, knocks on the door, whatever he does three or four times, and the defendant is arrested in the Bronx. So, from that, the only person who truly knows why he was in the Bronx at that time is the defendant. It might be extremely innocent to see his sister because he goes up there a lot of times or he's looking to get out of the area because he knows people are talking that he shot somebody. That is a jury call.

[DEFENSE COUNSEL]: But your honor, there's no testimony that he knew he was being pursued.

THE COURT: No, no, the idea of flight refers to the essence of a feeling of good and/or apprehension, potential of apprehension. Now, if he had nothing to do with it, is totally innocent, totally gone, not part of the scene, that would be your innocent aspect. I mean, have you looked at the charge?

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: It simply says it gives the opportunity of the jury to make a determination.

(ECF No. 10-24, at 16–17.) On direct appeal, the Appellate Division held that the charge was appropriately given, noting that

> While there was not a great deal of evidence that defendant was aware he was being sought or that he specifically fled to avoid capture, there was evidence that he was with Munroe immediately before Munroe was shot and that he left the scene of a shooting after the incident. He went to his sister's residence in New York. Whether his objective was to avoid the police, who attempted to arrest him at his own home, or merely to visit his sister was a legitimate issue for the jury to consider. The charge did not, in any event, deprive defendant of a fair trial.

(ECF No. 10-3, at 25.)

As discussed above, a federal court's review of jury instructions on a § 2254 petition is

limited to instances where the instructions violated the petitioner's due process rights. *Ricci*, 492 F. App'x at 312. An error in the jury instructions can only be a basis for habeas relief where it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. The provision of the flight charge did not violate Petitioner's due process rights. The charge was appropriately given under New Jersey law, which permits the jury to determine whether certain conduct of a defendant may be evidence of flight. *See State v. Williams*, 919 A.2d 90, 96–97 (N.J. 2007). Petitioner has not demonstrated that the charge had a substantial or injurious effect on the jury's verdict. Accordingly, habeas relief is denied.

### B. Ineffective Assistance of Counsel Claims[6]

The test announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims that a Petitioner was denied a fair trial because his counsel provided ineffective assistance. *See Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (applying *Strickland* test). The *Strickland* test has two prongs:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

---

[6] Certain of Petitioner's ineffective assistance of counsel claims were dismissed by the PCR Court as procedurally barred, creating the possibility that Petitioner's claims have been procedurally defaulted for the purpose of federal habeas relief. *See Trevino v. Thaler*, 569 U.S. 413, 421 (2013). Procedural default is an affirmative defense to be raised by respondents. *Tucker v. Warren*, No. 13-2908, 2016 WL 3010535, at *8–9 (D.N.J. May 25, 2016). Respondents did not raise this argument in their briefing. While this Court has the discretion to raise this issue *sua sponte*, *Evans v. Secretary Pennsylvania Department of Corrections*, 645 F.3d 650, 657 n.12 (3d Cir. 2011), it declines to do so here.

The first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler*, 566 U.S. at 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam).

"In cases in which the record does not explicitly disclose trial counsel's actual strategy or lack thereof . . . the presumption may only be rebutted through a showing that no sound strategy posited [by the Respondent] could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005) (citing *Yarborough*, 540 U.S. at 8). "[The Antiterrorism and Effective Death Penalty Act] requires that [habeas courts] 'determine what arguments or theories supported . . . or could have supported, the state court's decision.'" *Collins*, 742 F.3d at 548 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

The second prong of the *Strickland* test, prejudice, requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 546 (quoting *Strickland*, 466 U.S. at 694). The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. *Lafler*, 566 U.S. at 179 (quoting *Strickland*, 466 U.S. at 696). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Collins*, 742 F.3d at 547 (quoting *Strickland*, 466 U.S. at 694). "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." *Id.* (citing *Rolan v. Vaugh*, 445 F.3d 671, 682 (3d Cir. 2006)).

**1. Failure to Move for a New Trial (Ground Two)**

Petitioner asserts that his counsel was ineffective by not filing a motion for a new trial based on the State's alleged failure to "prove all the elements of either murder [or] the weapon offenses" and because the verdict was against the weight of evidence. (ECF No. 1-2, at 17.) The PCR Court denied this claim as Petitioner had failed to demonstrate either that his counsel was deficient by not moving for a new trial or that he was prejudiced by that failure. (ECF No. 17-4, at 239–40.) Moreover, the PCR Court highlighted that Petitioner had, on direct appeal, requested the Appellate Division overturn his conviction as against the weight of evidence. (*Id.* at 240.)

Petitioner has not demonstrated that his counsel was ineffective for not moving for a new trial. As this Court discussed above, *see supra* at 8–11, there was sufficient evidence presented at trial on which to find Petitioner guilty beyond a reasonable doubt. Counsel cannot be deemed ineffective for failure to bring a motion that would have been unsuccessful. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). This claim is denied.

**2. Failure to Object to Trial Court's Jury Charge on Identification (Ground Three)[7]**

Petitioner next contends that his counsel was constitutionally deficient by not objecting to

---

[7] Petitioner also raises this claim in Ground Twenty-Four of the Petition, which states:

> Trial counsel did not provide adequate legal representation to the defendant as a result of his failure to object to the trial court's charge to the jury regarding identification when the court erroneously indicated several witnesses had identified the defendant in court as having been the perpetrator. This violated Petitioner's right to due process, and equal protection of the law as guaranteed by the united states constitution and the Fifth, Sixth and Fourteenth Amendments thereto.

(ECF No. 3, at 48.)

a misstatement of fact made by the trial court in instructing the jury on the issue of identification.[8] Specifically, the trial court instructed the jury that "[y]ou will recall that these witnesses identified the defendant in court as the person who committed the offenses charged." However, none of the witnesses made in-court identifications of the defendant as the shooter at trial.

On its merits, the PCR Court denied this claim as counsel's failure to object did not fall below the standard for competent representation. (ECF No. 17-4, at 241–43.) In so holding, the PCR Court relied upon the Appellate Division's determination on Petitioner's direct appeal that "as a whole the jury instruction was adequate . . . though the jury instruction was not perfect, we do not conclude that the mistake had the capacity to prejudice the defendant so much as to offend all notions of justice." (*Id.* at 243.) The Appellate Division reiterated this finding in Petitioner's appeal of his PCR Petition, holding that even if counsel had been deficient by not objecting to the instruction, the "fleeting misstatement in the identification instruction did not have the capacity to undermine confidence in the outcome of defendant's trial." (ECF No. 10-14, at 9–10.)

The ruling of the Appellate Division on this claim was not unreasonable as Petitioner cannot demonstrate any prejudice that resulted from his counsel's failure to object to the trial court's misstatement in the jury instruction on identification. As discussed above, any error in the jury instructions was harmless and did not have an injurious effect on the jury's verdict. Petitioner cannot demonstrate that had his counsel objected to the instruction, the outcome of trial reasonably would have been different. Therefore, relief on this claim is denied.

### 3. Failure to Object at Trial (Ground Four)

Petitioner next asserts that his counsel was constitutionally deficiency because his "failure

---

[8] The Court's review of the additional documents submitted by the State demonstrates that this claim was duly exhausted. (*See* ECF No. 22-1, at 6–10.) Accordingly, the Court will apply AEDPA deference.

to object was pervasive throughout the trial and highly prejudicial to the Defendant." (ECF No. 1-2, at 19.) Petitioner contends that "counsel's consistent failure to object to extremely suspect/prejudicial identification testimony deprived Defendant of his Sixth Amendment right to effective assistance of counsel." Nevertheless, Petitioner fails to identify for the Court the specific testimony to which his counsel should have objected. *Accord Zettlemoyer*, 923 F.2d at 301 (requiring more than conclusory allegations to grant an evidentiary hearing on a petition for habeas relief). Nor does Petitioner indicate that the outcome of trial would have been different had his counsel objected to such testimony. *See Collins*, 742 F.3d at 546. For these reasons, relief on this claim is denied.

### 4. Failure to Object to Trial Court's Jury Instruction on Premeditation (Ground Five)

Petitioner claims that his counsel was ineffective because he did not object to the trial court's instruction to the jury that it could not consider premeditation as a factor of knowing or purposeful murder. (ECF No. 1-2, at 19–20.) The trial court issued this instruction following a question from the jury during its deliberation. The PCR Court rejected this claim because "premeditation was not a statutory element of murder under the circumstances." (ECF No. 17-4, at 245–46.) The Appellate Division held the same in Petitioner's direct appeal in which he argued that the trial court's response constituted reversible error.

Petitioner has not shown that his counsel was deficient for failing to object to the trial court's instruction on meditation. At the time of trial, premeditation was not an element of knowing or purposeful murder under New Jersey law, the charge which was pending against Petitioner. *See* N.J.S.A. 2C:11-3. Because premeditation was not a relevant factor, the trial court's instruction was not in error and there was no reason for counsel to object to it. Accordingly, Petitioner is not entitled to relief on this claim.

### 5. Failure to Object to Prosecutor's Reference to Arrest Warrant (Ground Six)

Petitioner next argues that his counsel was deficient for failing "to raise an objection to the prosecutor's repeated references to a warrant" for his arrest. As discussed, *supra*, Detective McMillan testimony at trial included references to the warrant for Petitioner's arrest—specifically when law enforcement obtained the warrant and how Petitioner's arrest was effectuated. During this testimony, Detective McMillan indicated that on the date of Petitioner's arrest he had been contacted by the New York Police Department that Petitioner was in custody and had been arrested on the arrest warrant for the Munroe shooting. (*See* ECF No. 10-22, at 16–17.) Petitioner asserts that his counsel should have objected to this testimony because it permitted the jury to infer that he was in the custody of the NYPD for some other offense, as opposed to the Munroe shooting. (ECF No. 1-2, at 22.)

While Petitioner argues that his counsel failed to object to this testimony, the record does not lend him any support. During Detective McMillan's testimony, his counsel made multiple objections to questions related to Petitioner's arrest warrant and his arrest:

> [THE PROSECUTOR]: Now, an arrest warrant is issued, when was that arrest warrant issued?
>
> [DEFENSE COUNSEL:]: Your, honor, I'm going to object to this.
>
> . . .
>
> [THE PROSECUTOR]: Detective, did there come a time when you made trip up to the Bronx?
>
> [THE WITNESS]: Yes.
>
> [THE PROSECUTOR]: And what happened when you made a trip up to the Bronx?
>
> [THE WITNESS]: We made a trip up to the Bronx because we had been informed by law enforcement personnel –
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object.

(ECF No. 10-22, at 13–14, 16.) Defense counsel cannot be ineffective where he did, in fact, object to the issues complained of by Petitioner. Moreover, although Petitioner argues that Detective McMillan's testimony permitted the jury to assume Petitioner was arrested for conduct other than the Munroe shooting, it was clear from his testimony that Petitioner was arrested on the Trenton warrant for the shooting. (*See id.* at 17 (indicating that Petitioner was "arrested on the Trenton warrant"). Petitioner's claim therefore fails under both *Strickland* prongs and is denied.

### 6. Failure to Object to Admission of Character Evidence (Ground Seven)

Petitioner next asserts that his counsel was ineffective for failing to object to "various forms of other-conduct evidence during trial." (ECF No. 1-2, at 23.) Petitioner maintains that certain evidence presented by the State was intended to portray Petitioner "as a person who acted Macho and called people offensive names," and further "as some[one] significantly involved in selling drugs and otherwise using drugs as a means of paying for services rendered." (*Id.*) In this respect, Petitioner contends that his counsel should have objected to the following testimony: (1) testimony from Guerra that "The Hole" was an area in which people used drugs and that Petitioner frequented "The Hole" for that purpose; (2) testimony from Kenute Brown that Petitioner had called him a "pussy"; and (3) testimony from multiple witnesses that the "The Hole" was a known area for drug-use. (*See id.* at 23–26.) Petitioner alleges that had his counsel objected to this testimony, "the trial court would have been required to preclude the evidence." (*Id.* at 27.)

Petitioner's claim fails as he has not demonstrated that he was prejudiced by his counsel's failure to raise these objections. First, testimony regarding "The Hole" and the type of activity that was conducted there was not "other crimes" evidence as the testimony was not specific to Petitioner's behavior at "The Hole." Rather, it pertained to "The Hole" itself. Thus, any objection to this testimony as improper "other crimes" evidence would have been overruled. Counsel cannot

be deemed ineffective for not raising such meritless arguments. *See Werts*, 228 F.3d at 203.

Moreover, had the other testimony been excluded at trial, there is no indication that the jury would have come to a different outcome. Petitioner cannot show that Mr. Brown's testimony that Petitioner called him a "pussy" somehow impacted the jury's verdict where there was significant other evidence presented as to Petitioner's guilt. Thus, even if this Court were to find that Petitioner's counsel was deficient for not objecting to this testimony, his claim cannot succeed on the prejudice prong of *Strickland*.

### 7. Failure to Raise Issue of Tainted Jury (Ground Eight)

Petitioner claims that as a result of his counsel's alleged deficient performance, he was denied his right to an impartial jury. Specifically, Petitioner takes issue with his counsel's failure to request that Juror No. 11 be excused after he disclosed previously had interacted with the state's medical expert. This disclosure came in the midst of trial proceedings. After the juror came forward, the trial judge briefly questioned him on his interaction with the expert:

> THE COURT: [I]f I can recount it myself, and you can correct me if I'm wrong, the fact that you did not recall when we first asked about the witnesses, whether – you didn't recall Dr. Ahmad having somehow been involved with a death that befell your daughter, and she of necessity is required under state law to do an autopsy. I imagine an autopsy was done?
>
> JUROR NO. 11: No, she didn't. She reviewed all the medical work and all the paperwork. She delayed the burial for a day or two.
>
> THE COURT: Because of the necessity of that?
>
> JUROR NO. 11: Yes.
>
> THE COURT: Now, do you believe that would impact you in any fashion?
>
> JUROR NO. 11: No.
>
> THE COURT: You were just being conscientious?
>
> JUROR NO. 11: The only fact that she delated the burial clicked in my mind.

> THE COURT: And you think notwithstanding that, you can make a fair decision?
>
> JUROR NO. 11: Yes.

(ECF No. 10-24, at 14.) After the juror was dismissed, the following colloquy occurred between the judge and counsel:

> THE COURT: I preempted either one of [you from examining]. I think it was fairly evident on its face that he clearly possessed a capacity to continue, and didn't question it long enough, and I didn't question[] the capacity to make a decision impartially and fairly notwithstanding the circumstances surrounding his daughter. I should have asked how long ago it was, but it was long enough that he didn't remember her. So if you have any problems with that.
>
> [PROSECUTOR]: I agree, your Honor.
>
> THE COURT: Any problem with that, Mr. Weissman?
>
> [DEFENSE COUNSEL]: No, your Honor, there's no problem at this juncture. I'm just concerned a little with the fact that you know he did emphasize the fact the only way it came to his attention is it delayed the burial, and anybody losing anybody real close to them, everybody looks for closure there, and he said it delayed a day or two. I mean he had a smile on his face.
>
> THE COURT: I think his demeanor was very genuine and ingenuous, and I was comfortable with the fact that he did not have a problem and he has so represented it, so we'll deal with that as it is.

(*Id.*)

Defendant asserts that he was prejudiced by his counsel's failure to object to the trial court's decision to retain the juror because "the insufficient inquiry resulted in a possibility that every single juror was exposed to extraneous information that the state's expert was so thorough in the medical profession that perfection was exalted above expected deadlines." (ECF No. 1-2, at 29.) Petitioner further takes issue with counsel's failure to request the trial court provide the jury with more stringent instructions on their duty not to discuss the case with each other or review

media regarding the proceeding. (*Id.* at 30.)

Petitioner, however, cannot demonstrate he suffered any prejudice under *Strickland* as a result of his counsel's failure to object to the retention of Juror No. 11 and to the trial court's apparent deficient instruction of the jury. A defendant's right to a jury trial guarantees "a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Indeed, "[t]he safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Id.* "Due process means a jury capable and willing to decide the case solely on the evidence before it." *Id.*

The trial court's colloquy to determine the impartiality of Juror No. 11 was sufficient to preserve Petitioner's right to a jury trial as the juror confirmed he would be able to act impartially despite his previous interaction with the state's medical expert. Petitioner's claims of prejudice are merely speculative and are insufficient to demonstrate prejudice under *Strickland*. Nor can Petitioner demonstrate any prejudice that resulted from the trial court's apparent lack of instruction to the juror to not discuss or consume media regarding the criminal proceeding. He makes no allegation that any juror violated this rule. Accordingly, he is not entitled to relief on this claim.

### 8. Failure to Clarify Identification Testimony on Cross-Examination (Ground Twenty-Five)

Petitioner next claims that his counsel was constitutionally deficient as a result of his failure to "clarify through cross examination of two state's witnesses the misleading impression arising out of the State's questioning that the witnesses had identified defendant in court as the perpetrator." (ECF No. 3, at 37.) Petitioner raised a similar claim in his PCR, where he argued

that his counsel failed to properly cross-examine Guerra and Linda Brown. (*See* ECF No. 17-4, at

244.) On its review of the PCR Court's decision, the Appellate Division stated:

> Our review of the questioning of those witnesses does not reveal any
> obvious deception that would have induced a reasonably competent
> attorney to object. Nor would a reasonably competent attorney
> necessarily revisit the issue on cross-examination, which might open
> the door to further questioning by counsel and consideration by the
> jury of the fact that these witnesses had in fact identified defendant
> as the perpetrator when speaking to the police.
>
> . . .
>
> We also find the second prong lacking. While we are not persuaded
> that 'clarification' was required to assure that the jury understood
> that the in-court identifications of defendant were only identifying
> who he was and not that he was the perpetrator, such clarification
> would not have affected the outcome of the trial.

(ECF No. 10-14, at 10–11.)

This Court does not find that the Appellate Division's decision on this claim was

unreasonable or contrary to federal law.[9] It is evident from the records provided to this Court that

Fowler and Linda Brown did not identify Petitioner at trial as the shooter but, in fact, identified

him as Tyrius Green. The Court agrees with the Appellate Division's conclusion that revisiting

this issue on cross-examination would have opened up further testimony regarding the witnesses'

long relationships with Petitioner. Moreover, Petitioner has not demonstrated that had his counsel

cross-examined these witnesses in a different manner, the outcome of trial would have been

different. Accordingly, relief on this claim is denied.

### 9. Ineffective Assistance of Appellate Counsel (Ground Nine)

Petitioner claims that he received ineffective assistance of appellate counsel because his

---

[9] The Court's review of the record demonstrates that this claim was exhausted in the state courts.
(*See* ECF No. 22-1, at 10–11.) Accordingly, the Court considers the claim under the AEDPA's
deferential standard of review.

appellate counsel "fail[ed] to raise the claims asserted in the briefs that followed the direct appeal." (ECF No. 1-2, at 32.) The Court construes Petitioner's claim as alleging his appellate counsel was ineffective for not raising the arguments set forth in the PCR Petition and the Amended Petition.

While *Strickland* is applicable to appellate counsel, "it is a well established principle . . . that counsel decides which issues to pursue on appeal." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Critically, appellate counsel is not required to raise every nonfrivolous claim a defendant desires to pursue. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Nor is appellate counsel required to raise meritless claims on appeal. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

Petitioner is not entitled to relief on this claim. Not only does Petitioner fail to specify which claims appellate counsel should have brought, as discussed at length in this opinion, the claims raised in this Petition lack merit. Thus, appellate counsel cannot be ineffective for failing to raise those claims on appeal.

### 10. Cumulative Ineffective Assistance of Counsel (Ground Ten)

Finally, Petitioner brings a claim of cumulative ineffective assistance of counsel. The Third Circuit has recognized that "errors that individually do not warrant habeas relief may do so when combined." *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). Cumulative errors of counsel may entitle a petitioner to habeas relief where "they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Albrecht*, 485 F.3d at 139. Petitioner is not entitled to relief on this claim as he has not demonstrated that his counsel was deficient in any way, nor has he demonstrated that the cumulative effect of any errors made by counsel resulted in "actual prejudice."

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court will grant a certificate of appealability on Petitioner's claim that the trial court's jury instruction on identification violated his right to due process under the Fifth and Fourteenth Amendments because reasonable jurists could find the district court's assessment of the constitutional claim as debatable. The Court will additionally grant a certificate of appealability on Petitioner's related claim of whether his counsel was ineffective for failing to objective to the trial court's instruction on identification. The Court will, however, deny a certificate of appealability on the remaining claims as Petitioner has not made a substantial showing of the denial of a constitutional right.

## VI.    CONCLUSION

For the reasons set forth above, the Amended Petition is denied in its entirety. A limited certificate of appealability shall issue. An appropriate order follows.

_____  9/10/19
PETER G. SHERIDAN, U.S.D.J.